Thank you, counsel. Please be seated. This next case is 4-15-0574. People v. Matthew Sinclair. Appearing for the appellant is attorney Adam Dill. And for the appellee, attorney David Manson. Mr. Dill, are you ready to proceed? I am, your honor. You may. Good morning, your honors. May it please the court, counsel. Your honor, my name is Adam Dill. I'm with the law firm of Irwin Martinkus & Co. in Champaign. I represent Matthew Sinclair in this matter. The term immediately accessible has been defined for decades by Illinois courts to refer to two separate and distinct things. First, proximity to the individual. And also the capability of that individual to access, to possess, to reach. In fact, one court, the Shields opinion from 2003 cited, even refers to something within easy reach of the person who the state has to prove that is immediately accessible to them. It makes logical sense as well, your honors, because the purpose of this statute, and I'm talking about the aggravated and unlawful use of a weapon statute, in this case is to ensure the safety of individuals. To ensure that people who do not have proper training, in this case a concealed carryout card, cannot possess a weapon in a manner that's dangerous, that's loaded, or that has the ability to be loaded very quickly before that person can assess a situation and move forward. It makes complete logical sense that that is how immediately accessible is defined. In this case, the trial court failed to recognize that under this very unique set of facts, and I'll review those facts here in a moment, but under this very unique set of facts, this was the issue in the case. Was the ammunition for this unloaded firearm immediately accessible at the time it was uncased? And to review those facts for your honors, and these are uncontroverted facts, there was very little in dispute at this trial. Matthew Sinclair is 6'3", 265 pounds. He was a former linebacker for the University of Illinois. He was driving home after a rare victory for the University of Illinois at Purdue. He was coaching at the time, and he was driving his pickup truck. He had an unloaded firearm in the center console of the vehicle, and it's not in dispute and it's well settled in case law that when that firearm is within this enclosed center console, it's cased. He had that unloaded firearm in the center console. He was driving down I-74 and made an incredibly stupid decision as his friend came up to pass him on the side. He took that firearm while driving with his right hand on the wheel. He took the firearm out of the center console, uncased the unloaded firearm, and held it out the window showing his friend that he had it. And the facts are uncontroverted. He wasn't pointing it at him. He was displaying it. At that moment, and all of the witnesses, Your Honor, testified that this was mere seconds that it was out, both the state's witnesses and Mr. Sinclair and his friend Mr. Berry who testified at the trial. Uncontroverted fact. So the time period we're talking about here is very limited. This isn't a situation where someone is pulled over and they're no longer driving. The only time this unloaded firearm was uncased was when it was outside of that center console for a few seconds while he was driving with both hands occupied, one with the weapon and one driving, and then placed it back in the center console, recasing the weapon. Mr. Dill, at page 23 of the appellant's brief, it's written, quote, Had Sinclair been in a parked vehicle with ammunition in the door pocket with the gun uncased, an argument could be made to support a violation. Absolutely. So is it the fact that he was driving at the time that makes the ammunition not readily accessible? Absolutely. Well, partially, Judge. Partially it is his driving, it is both hands are occupied, and also his size. The further uncontroverted facts... Well, when you say that had he been parked, his size would still be the same as it was when he was driving, right? It would be, Judge, but he would have an additional ability to move and then fish around inside of this pocket on the door where the ammunition was 8 to 10 inches deep. I would argue, Judge, that it was still not immediately accessible in light of all the surrounding circumstances here, but certainly an argument could be made that it was closer to being immediately accessible while parked. Certainly it wasn't while he's occupied with both hands driving the vehicle. Well, if he's driving and he has the gun in one hand, one hand on the wheel, which is the evidence here, right? Yes. He was driving with one hand on the wheel, one hand on the gun. What if he had a clip of ammunition sitting in his lap? Readily accessible? Or are you saying with your argument, since he's got one hand on the wheel, one on the gun, that's not readily accessible? I'm not saying that. Certainly if the clip was sitting in his lap, he would have the ability to potentially grab that clip and load the weapon. Still, the purpose of the firearm, though, is the ability to load the weapon and create a dangerous situation at that moment while he's driving. What's key here is that in this case, the clip was buried 8 to 10 inches deep within a pocket, a pocket that was elastic that could be moved in that driver's side door to the point where the actual clip is down by his calf. He's a large man who cannot reach into that and fish around and find it. Certainly not when he's not driving, that would be extremely difficult, and certainly not while he's driving with both hands occupied. These mere seconds that are at issue in this case. Do you have any case law that would support the proposition that whether or not the ammunition is readily accessible depends on what the defendant is doing at the time, whether or not he's capable of grasping it because he's doing other things with his hands? Certainly, Judge, this is a very unique case factually in that situation, and most of the cases cited involve situations where either in a vehicle where the person is not driving as a passenger, or in a situation where the vehicle has already been stopped by the police and they're no longer occupied. So I don't have anything directly on point on that. However, with the language capability to access being added to the proximity requirements from the Shield's opinion in going back decades on how to find immediately accessible, it is clear that it means capability is the ability to possess, the ability to grab, to reach easily. So on these particular facts, I have nothing directly on point because it is very unique. But applying the law as it's been for decades, certainly at a minimum, the trial court should have properly instructed the jury as to what the law was, further refining or defining the definition of immediately accessible in this case. And it's not our position, Judge, that a court needs to further define immediately accessible in all of these cases. Rarely is this an issue, to be honest with you, in an aggravated, unlawful use of a weapon prosecution. But in this particular case, Mr. Martinkus made it the theory of the case. It was the theory of the case. The facts were uncontroverted, brought it to the attention of the trial judge, instructed the judge and presented jury instruction number 13 saying, consistent with the S.H.I.E.L.D. opinion and relevant case law, accessibility refers to the proximity of the ammunition to the defendant and the capability to reach the ammunition. An accurate statement of the law in Illinois on the direct issue in the case, on the defense in the case, and the judge refused that jury instruction. That was air in this case under these particular very unique set of facts. Secondly, I believe the court aired, Your Honors, when given an opportunity after the motion to reconsider to review the case law, to review the transcripts, to review the evidence, was given an opportunity to enter a verdict of not guilty, notwithstanding the verdict of the jury, to review that evidence in the light most favorable to the state, but find it was uncontroverted. The facts were uncontroverted as to whether he had the capability to grab that clip in that court and to enter a not guilty verdict at that time. Your Honors, the third issue that we've dealt with, well, back to the jury instruction issues, Your Honor. It is clear in Illinois law through the People v. Williams opinion, citing People v. Gilliams from the Illinois Supreme Court, a defendant is entitled to have the jury receive instructions on the law that applies to his theory of the case, provided there is evidence in the record to support that theory.  And the jury instruction should have been given. The court tried to explain away in the motion to reconsider its decision not to tender the proper jury instruction by claiming that immediately accessible is easily definable. It's common knowledge. People should know what immediately accessible means just based on the language. Respectfully, Judge, I believe the court, well, contradicted itself when it then had to justify that opinion by looking up the definition of immediately accessible in the dictionary to define it. And then failing to cite or look at the plethora of case law dealing with what does immediately accessible mean in a particular context. Both cases where courts have upheld a finding of immediately accessibility in cases where they haven't. It's not clear, it's not obvious what immediately accessible means, especially in the context of the facts of this case and that jury instruction should have been given. We didn't make a constitutional argument as well, Your Honor, as applied in this particular situation. Your Honors are well aware that the standard is that for vagueness and as applied and that the statute fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so he may act accordingly from the People v. Greco decision. Moreover, as applied, due process challenges must be based within the factual context of each case and that's from the Izzo opinion from the Supreme Court in 2001. It's obvious that a person of, well, Matt Sinclair, a person of ordinary intelligence, believed he was within the law when he separated, within the spirit of the law, separated the clip from the weapon, cased the weapon, and separated the two and buried the clip in the side of the door, in that door pocket. A person of ordinary intelligence thought he was within the law and I submit to you that a reasonable person would believe that was within the law. Separating the weapon, creating a situation where it was not inherently dangerous at that moment and still was not inherently dangerous when he made the incredibly stupid decision, but not criminal decision, to take that unloaded weapon out of that center console and hold it out and display it for a few seconds to his friend. In light of that, Your Honors, I would respectfully request that Your Honors vacate the jury's finding, enter a finding for the defendant, or at a minimum, remand the case back for a new trial with instructions for the appropriate jury instruction to be issued to the jury. Thank you. Thank you, Mr. Dill. Mr. Manson. Good morning, Your Honors. May it please the court, counsel. In this case, the trial court did not abuse its discretion in refusing the instruction offered by the defendant. And that is the standard that is to be applied here when the trial court is offered a non-IPI instruction. Did the trial court abuse its discretion? In People v. Hudson, the Illinois Supreme Court expressly rejected the De Novo's review and said, no, it's an abuse of discretion whether or not the trial court should give a non-IPI instruction. In this case, the jury was fully instructed as to all of the elements of defense. The defendant requested an instruction on defining one particular word in the phrase, the accessible, with a partial quote from one of the cases dealing with accessible. The instruction offered by the defendant made no mention of the emergency, but just refers to proximity of the ammunition to the defendant. I submit that the trial court, who was very aware of the law in this case, had read the cases. His remarks at the time he refused the instruction shows he was using his discretion to say no. These are terms, common terms, well known, not terms of art. There's simply no need to pick a phrase out of one case and turn it into an instruction to the jury. And I think the trial court's decision was correct. The abuse of discretion is met only if the trial court's ruling is arbitrary, unreasonable, or no reasonable person would agree with the view taken by the trial court. And I submit that the trial court's decision not to offer this partial instruction, partial quote, was not an abuse of discretion. The defendant has cited a number of cases in which courts have used variations of his instruction in explaining their ruling as to why a particular defendant under a different statute was guilty or not guilty of unlawful use of weapons based upon access to weapon. Each of those, which begs the question, each of those have a slightly different interpretation or definition of what accessible is, which begs the question, is the particular one picked out for the defendant the correct statement of law the trial court was required to give? And I submit that none of the cases cited by the defendant supports the claim that this is the type of instruction that the trial court is required to give. The terms immediately accessible are easily understood, and there's simply no instruction required. With respect to the claim that the trial court should have entered a verdict on the defendant's behalf, the defendant presents this as a question of a matter of law. It is not a matter of law. It's a question of fact for the jury to determine. Did the defendant have access to this ammunition clip that was in the door pocket right next to his leg? The defendant says it's unaccessible as a matter of law because the defendant testified he couldn't reach it without moving over in his seat and didn't know where it was. The problem with that argument is that this jury, the trial court, and even this court, was simply not required to believe the defendant's testimony that he could not reach the ammunition clip and did not know where it was in the door. The testimony was that this ammunition clip was at the top of the pocket. There was absolutely nothing on top of it. It was in plain view when the police officer opened the door. There is nothing on top of it, nothing that could preclude the defendant from just reaching down and picking it up. The fact that he has to scoot over a couple inches does not make it inaccessible, either as a matter of fact or as a matter of law. The jury heard testimony that the defendant took the gun out of the case, put it in his lap, rummaged in that center console that was bigger and deeper, pulled out a cord for charging a cell phone, gave it to his friend, closed the thing up, then pointed the gun out the window. He then put it back on his lap, put it back in a soft case, and then put it back in the center console. So maybe it is a matter of seconds, but there is a period of time when the gun is uncased, when he's rummaging in the center compartment with it sitting on his lap as he's driving, and then again after he puts it back in his lap and closes it up to put it back in the thing. So there's plenty of time for the defendant to have accessed the gun clip that is right next to his leg. I think under the facts of this case, Justice Harris, you were correct with your analogy to the gun clip on his lap. This clip in the door is just as accessible to this defendant as it would be a clip on his lap. So to say the defendant claimed that as a matter of law this was unaccessible should be rejected. The jury's determination of credibility as far as accessibility and that this gun clip was accessible meets the reasonable doubt standard, taking the evidence in the light most favorable to the state. Was that gun clip right next to the defendant's leg accessible? And it was, clearly. And with respect to the claim of vagueness of the statute, the defendant's testimony and actions show that he was familiar with the law and knew what it meant. The fact he made a mistake in his interpretation of the law as saying, you know, if I just put it here, it's not accessible, that does not make the statute vague or unconstitutional as applied. The language of the statute is clear, gives any reasonable person notice to know that a pocket right next to your leg is accessible. The statute does not have to be so precise as to describe the particular incident that occurred on this particular date before it gives the defendant notice that, hey, you can't put the gun clip where you can reach it simply by reaching down. You have to do something else with it. You need to put it in a glove compartment locked or put it in the bed of your truck in a locked compartment so it's not accessible. Plus you have the testimony of the defendant here that he had the gun and the ammunition in case of an emergency because he had a broken window and had had a blowout a few days before because he was afraid of being stranded somewhere and wanted the gun and knew it needed to have it accessible to him. So to say that when he put the gun clip in the door he was putting it where it's not accessible is sort of inconsistent with his purpose for having the gun in the car and with his intent for having the gun in the car in the first place, which again goes to the question of was this gun clip accessible to the defendant. And clearly a pocket, the jury with his own experience, can use his own experience to know how hard is it really to get into one of these door pockets in a car. In particular, whereas here the testimony is the gun clip was the last thing put into the door and there's absolutely nothing on top of it. So if you can rummage in your center console and get a cord out of there, you can certainly rummage in that side door and get out the ammunition clip. So I submit that the trial court's decision regarding the destruction was correct, that the evidence clearly supports the jury's verdict, and that this case should be reaffirmed. All right, thank you. Thank you. Thank you, Your Honors. Respectfully, I would disagree first with counsel on the issue of the appropriate standard to use by this court when reviewing the trial court's decision. Respectfully, I believe the case law is clear in this situation that it's a de novo standard of review on the issue of the failure of the court to tender the jury instruction. The appellate prosecutor here has cited in his brief the Hudson opinion that creates an abusive discretion standard. But I note that the Hudson opinion is factually opposite. The trial court in that case gave the non-IPI to the jury, and that was the issue. And at that point, then, the appellate court had to review under an abusive discretion standard. This is different. We're talking about fundamental due process and the ability for the defendant to present his defense in a manner and have the law adequately explained to the jury so that they can properly deliberate in this case. The People v. Max opinion cited in the briefs stands for this proposition. Propriety of jury instructions is generally reviewed on an appeal for an abusive discretion. When the issue is whether the applicable law was correctly conveyed by the instructions to the jury, the appropriate standard for review is de novo. That's what we have here, in my opinion, Your Honors. On this very unique factual situation, that law needed to be properly conveyed and further defined, and it was when Mr. Martinkus attempted to tender the correct jury instruction, accurately citing the current state of the law in the state of Illinois and the way that law has been for decades. Proximity and capability, and the court refused it. I'd also respectfully disagree with counsel on his statement that a clip sitting in someone's lap is just as acceptable as a clip in a driver's side door pocket. And let's be clear what the undisputed facts were. This isn't hard plastic. This is a door pocket that's 8 to 10 inches deep. The clip was down in the bottom. The officer testified it was in plain view, but that was a situation where they were searching the vehicle and he opened up the pocket. There were other items in there, in a pocket that's rather large in a pickup truck. And don't forget, in these very unique facts, to me, I can reach down into a pocket of a door, but a person who's 6'3", 265 pounds, while driving, again, we're limited here. This isn't after he's been pulled over. This isn't if there's an emergency and he's stranded somewhere and he can open the door and reach down and get the clip. This is only when he's driving is that weapon uncased. And it has to be uncased to be a violation of the law, so we have a very limited time period here. You have both his occupation with his hands and his size that prevented him from doing that. I'd also note briefly, Your Honors, the defense cites numerous cases where courts have found something was immediately accessible. I would note that none of those cases, the facts of any of those cases, involve situations where the defendant's driving. When that is going on, and that's what makes this case so unique, and it's why further instruction was required for the jury to ensure that the defendant's due process rights were protected as he presented his defense for what was essentially a terribly stupid, ill-thought-out joke, but not a crime. Thank you. Any further questions? I don't see any. Thank you. Thank you both. The case will be taken under advisement and a written decision shall issue.